REUEL HOWARD *vs.* MERCY G. HOWARD.

A house, which was under mortgage, was conveyed by deed of warranty to A. in trust for a married woman, with the consent of her husband, and was paid for with money which was hers before marriage. The husband and wife entered into possession. The wife afterwards obtained a divorce from bed and board, and A. thereupon con veyed the house to her. Before the divorce, the husband took an assignment of the mortgage on the house, and made an entry for foreclosure, in the manner prescribed by the *Rev. Sts. c.* 107, and then transferred the mortgage to B. *Held,* in an action by B. against the wife for forcible detainer, that the assignment of the mortgage to the husband was not fraudulent as to the wife or the mortgagor ; and that B had the legal title against the wife, and was entitled to judgment for possession.

Parol evidence that an assignment of a mortgage was intended to be a discharge, is inadmissible, except for the purpose of proving fraud.

THIS suit was brought on the Rev. Sts. *c.* 104, § 4, to obtain possession of a dwellinghouse &c. situated in Orange Place, in Boston.

The trial was before the chief justice, who made the following report of the evidence :

William Trumbull owned the estate, on the 16th of August 1832, and on that day mortgaged it to Henry Hatch, to secure the payment of $ 1650, in one, two, three, and four years, with interest. Hatch assigned the mortgage to Charles Hood, on the 23d of May 1833 ; Trumbull, the mortgagor, remaining in possession. In August 1835, Trumbull advertised the estate for sale at auction, and among the persons who attended at the time and place of sale, was Boyd Howard ; but the estate was not then sold.

Said Boyd Howard was the son of the plaintiff, and, at that time, the husband of the defendant. She obtained a divorce *a mensa* for his cruelty, by a decree passed on the 28th of May 1838 ; her libel having been filed, and service thereof made, on the 28th of April preceding.

Trumbull having failed to sell the estate at auction, Boyd Howard, and his wife, the present defendant, examined it, and both represented to him that she had separate property of her own, and that they were desirous of investing it in real estate for ner use, the said Boyd being then embarrased ; and Trumbull

offered the estate to them for $2075, which they agreed to give. He was to give a deed with warranty, and take upon himself the payment of the outstanding mortgage then held by Hood. The deed was to be given to Isaac Whitman, brother of the defendant. The defendant gave this reason for not having the deed made to herself or to her husband, viz. that her husband was embarrassed, and if the estate was in his name or hers, it would be attached by his creditors. Trumbull carried the deed to the house where Boyd Howard and his wife then lived, and she took out of a bureau $1650 in bank notes, and gave them to Trumbull. She stated that she had not the other $425, but that she could raise it from notes which she exhibited. It was then agreed both by her and her husband, that she should give Trumbull her note for $425, which he consented to take. She thereupon signed such a note, which her husband attested, and delivered it to Trumbull, payable to him or his order, dated September ·7th 1835, and he thereupon executed a deed of said estate to said Isaac Whitman, pursuant to the aforesaid agreement. He then went, in company with said Boyd Howard, and paid, from the money received as aforesaid, about $1200 to Hood, assignee of the mortgage, leaving due thereon about $400. Boyd Howard and his wife thereupon entered upon the estate, and occupied it till about the time of her libel for a divorce, in April 1838.

The sum of $1650, paid as above, was raised from notes which were held by the defendant at the time of her marriage, in April 1835, and which remained uncollected till after the above arrangement was made for the purchase of said house. Her husband took the notes to Barnstable, when they were due, and there received the money. Immediately after his return to Boston, an officer called at the house to make an attachment, and he gave up the money to his wife, to prevent its being attached ; and it was retained by her, or by a female in the house, to whom she intrusted it, until it was paid to Trumbull, as above stated.

On the 27th of June 1837, said Hood assigned the aforesaid mortgage to said Boyd Howard, under these circumstances :  A

legacy was at that time due to the defendant, under the will of her mother. Boyd Howard applied to the executor of the will for payment of the balance of this legacy; and the executor, through an agent, paid him $400 in Boston, on the 26th of June 1837 ; having paid him, on the 19th of April preceding, $305 as part of said legacy, to be applied to the discharge of a trustee suit then pending against said Boyd Howard as principal, and said executor as trustee, for the recovery of a debt due from said Boyd to one Partridge. On said 26th of June, or on the next day, said Boyd paid said $400 to said Hood, assignee of the mortgage, and took an assignment, as hereafter stated.

Said Hood testified, (to avail only so far as the evidence is competent,) that when he received the last payment and made a discharge, he supposed he was receiving it of Trumbull, having known nobody else : That he did not know by whom it was paid : That he did not indorse the note secured by the mortgage, nor assign it to any body : That the note was originally made payable to the order of Trumbull, and was indorsed by him in blank : That he gave up the note in the same manner that he should give up any paid note.

On cross examination, he said — in reply to a question whether it was his intention to make an assignment of the mortgage — that it was not his intention to make an assignment. On looking at the assignment, he said it was his signature, and that it was done when the note was paid ; that the note was then handed over ; that Justin Field came to him with a man whom he (Hood) did not know, and he (Hood) asked Field to write a discharge, and supposed he did : That he should know the difference between discharging and assigning a mortgage ; but he was then very busy : That he did not know, while he was testifying, that he knew Boyd Howard ; that he knew Trumbull, and should have known if it had been he who paid the money : That he had an impression that Trumbull paid the prior notes secured by the mortgage ; but he (Hood) was cashier of a bank, and the notes were at the bank, where many notes were paid every day : That if it had been intended to keep the mortgage alive, he thought he should have remembered it : That he exe-

cuted the discharge without reading it; knowing Field, and having confidence in him that it would be done right: That he was confident it was not explained nor read to him.

Justin Field testified, in regard to the same transaction, that he wrote the assignment of the mortgage from Hood to Boyd Howard, saw it executed, and witnessed it: That he went with Howard for the purpose of taking an assignment, and that it was so written by his (Field's) direction. That he told Hood he had come to get an assignment, if he was willing to assign: That he believed Hood said he did not care, if he got his money: That he wrote the assignment in the bank, that Hood signed it, and he (Field) witnessed it and took Hood's acknowledgment: That he told Hood it would be well to have two witnesses, and Hood called a clerk, who signed his name as a witness. That he (Field) advised this course of proceeding; that he had commenced a suit for Howard against Isaac Whitman for money paid for the house in question, and had told Howard that if he could get an assignment of the mortgage, it might perhaps protect his title against Whitman. Howard had informed him (Field) that he purchased the estate.

On cross examination, he said he had no recollection of any thing further that occurred when the assignment was executed: That he made no explanation of the difference between an assignment and a discharge: That he did not introduce Howard to Hood, as he supposed Hood knew him: That he believed Howard paid the money to Hood: That he (Field) told Hood " we will pay the money, if you will give an assignment" That he saw the money ($ 400) paid to Howard by the agent of the executor of the will of the defendant's mother, the day before it was paid to Hood, or the same day: He believed it was the same money, but did not certainly know that it was.

The plaintiff gave in evidence a certificate signed by two witnesses, and sworn to, that on the 12th of October 1837, Boyd Howard took open and peaceable possession of the estate n question, for condition broken. This was recorded, October 13th 1837, in Suffolk registry of deeds. This certificate was admitted in evidence of the facts stated therein, without requiring the witnesses who signed it to be called.

The plaintiff also gave in evidence a deed of assignment of the aforesaid mortgage, made to him by Boyd Howard, dated April 26th 1838, two days before the filing of the aforesaid libel for a divorce, but after Boyd Howard had notice of the defendant's intention to file such a libel. The consideration of said assignment, as expressed in the deed, was $1600.

After the aforesaid decree of divorce, viz. the 28th of June 1838, Isaac Whitman conveyed said estate, by deed of quit claim, to the defendant.

In regard to the deed of assignment from Boyd Howard to his father, the plaintiff — Justin Field testified, that he wrote it, but saw no consideration paid ; that he had seen a letter from the defendant to Boyd Howard, several days before the deed was dated, threatening a libel for a divorce, if he would not give her certain property ; and he (Field) thought it likely that Boyd Howard brought the letter to him. The plaintiff was then in Boston, and the deed was delivered to him in person. He said his son owed him, and that he was going to make him a further advance ; the witness saw no note given, nor settlement made, and could not state with certainty any sum that was mentioned ; he believed that something was said of six, seven, or eight hundred dollars, but nothing was said of the origin of the debt. The witness could not say that the deed was made in consequence of the letter threatening a libel. He did not hear the parties to the deed say so, and did not himself then believe that a divorce could be obtained.

A question was made, whether any forcible entry or detainer was proved ; but as that point was waived by the parties, the evidence respecting it is not stated.

A nonsuit was entered, subject to the opinion of the whole court, upon the evidence, whether the plaintiff be entitled to possession of the estate in question, upon the title proved ; it being agreed that if he be so entitled, the nonsuit should be set aside, and judgment be rendered for him on default : Otherwise, the nonsuit to stand, and judgment to be rendered for the defendant.

*J. P. Rogers & Sparhawk*, for the plaintiff. The evidence shows tha- it was the intention of Boyd Howard to reduce $400

of the legacy to his wife to his own possession, and to apply it to his own use, and that he effected that intention. If so, then his paying for the estate with the money thus obtained, will cause it to enure to his own benefit, and the defendant cannot set up a claim that will defeat a subsequent purchaser from her husband. 1 Roper Husb. & Wife, 169. 204. 208. *Garforth* v. *Bradley*, 2 Ves. sen. 675. *Schuyler* v. *Hoyle*, 5 Johns. Ch. 196. *Haviland* v. *Bloom*, 6 Johns. Ch. 178. *Wildman* v. *Wildman*, 9 Ves. 174. *Carr* v. *Taylor*, 10 Ves. 578. It is sufficient for the plaintiff's rights, that the $400 were reduced to possession by Boyd Howard; but the $1650 were also reduced to his possession. The agreement, that the investment of this latter sum should be for the wife, does not bind a subsequent purchaser; as there was no consideration for such agreement, moving from the wife to the husband. The agreement was post-nuptial, and cannot be enforced, either at law or in equity. In equity, such agreement will be supported so far as it is executed, but no further. *Dolin* v. *Coltman*, 1 Vern. 294. *Reade* v. *Livingston*, 3 Johns. Ch. 481. *Sexton* v. *Wheaton*, 8 Wheat. 229. *Picquet* v. *Swan*, 4 Mason, 443. *Bullard* v. *Briggs*, 7 Pick. 533.

Whitman must be considered, at most, as the trustee of Boyd Howard, who paid the consideration. But he was trustee only of an equity of redemption, though he claimed the whole estate. The legal estate vested in Boyd Howard, on his taking the assignment of the mortgage; and this defeated the trust estate. He held by a title paramount to that of Whitman, and had a right of possession under the mortgage.

*Cestui que trust* may disseize the trustee : *A fortiori*, may he take an estate to himself under a mortgage ; especially where the trust is an implied one. *Hopkins* v. *Hopkins*, 1 Atk. 591. Stearns on Real Actions, (2d ed.) 17.

The mortgage debt was not extinguished by the assignment. It was the intention of Boyd Howard to keep the estate in mortgage distinct and separate ; and he took possession, as mortgagee, of the legal estate. *Gibson* v. *Crehore*, 3 Pick. 475 5 Pick. 146.

The plaintiff sets up the assignment, and on that he relies. He has all the rights of a subsequent purchaser. Admitting that Boyd Howard agreed that the equity of redemption should be held in trust for his wife, by Whitman ; he was not thereby estopped to purchase the right afterwards. *Draper* v. *Jackson*, 16 Mass. 486. *Wallis* v. *Truesdell*, 6 Pick. 457. *Nichols* v. *Nichols*, 8 Pick. 175. Boyd Howard had the legal possession, and conveyed the legal right to the plaintiff. And if there is any remedy for a claimant under the mortgagor, it is by bill in equity. He cannot resist a real action, or the process adopted in this suit, by the assignee of the mortgage. *Parsons* v. *Welles*, 17 Mass. 419. *Howe* v. *Lewis*, 14 Pick. 329.

*Greenleaf*, for the defendant. When the plaintiff undertook to purchase of Boyd Howard, the notes secured by the mortgage were overdue, and the plaintiff, therefore, took the estate, if at all, subject to all equities. In the deed to the plaintiff, Boyd made no covenants ; no consideration was in fact paid, and a false one was inserted. The deed was given when a libel for divorce was known to be impending ; and the intention was to defraud the wife of her inheritance. The mortgage was paid, in fact, in June 1837, by the husband with the wife's money. The money brought from Barnstable by the husband, and put into the wife's hands, and by her paid to Trumbull, was not reduced to the husband's possession. *Ryland* v. *Smith*, 1 Mylne & Craig, 53. *Stanwood* v. *Stanwood*, 17 Mass. 57. 2 Kent Com. (4th ed.) 138, and *note* (b.) 1 Roper Husb. & Wife, 205, 206. *Blount* v. *Bestland*, 5 Ves. 515. *Purdew* v. *Jackson*, 1 Russell, 1, 70. *Phelps* v. *Phelps*, 20 Pick. 556. *Hayward* v. *Hayward*, 20 Pick. 517. *Draper* v. *Jackson*, 16 Mass 480.

The original intention of the parties, that the estate should be the wife's, continues until the contrary is legally made to appear. 1 Phil. & Amos on Ev. 468. The husband is estopped to say that he had an original fraudulent intent.

Post-nuptial agreements between husband and wife, respecting her property, bind him. 2 Kent Com. *ubi sup.* 2 Story on Eq. (2d ed.) §§ 1380. 1391 Where property is assigned

for her benefit, with his consent, he " cannot intermeddle or dis-
pose of it." *Turner's case,* 1 Vern. 7, & *note* (2) Raithby's ed.

The transfer by Hood, if regarded as an assignment, was a
fraud on Trumbull, the defendant and Whitman, and on Hood
also.   But it was a discharge, and was so intended by Hood.
*Marvin* v. *Vedder,* 5 Cow. 671.   Evidence that payment,
and not an assignment, was intended, is admissible.   A verbal
act is part of the *res gesta.*

Payment extinguishes a mortgage. · *Vose* v. *Handy,* 2 Greenl.
322.   *Gray* v. *Jenks,* 3 Mason, 531.   *Wade* v. *Howard,* 11
Pick. 289.   Rev. Sts. *c.* 107, § 5.

Boyd Howard's entry upon the estate availed nothing.   It
was made before the divorce, and was made upon property of
which' he was before in lawful possession.   As to Whitman,
that entry was void, without actual notice to him.   Registering
the entry was only constructive notice, which is never sufficient
to work a forfeiture.   Rev. Sts. *c.* 107, § 2, and previous
statutes.   That entry stands, at best, on the same ground as
an entry before condition broken ; and it was not followed up.
*Scott* v. *McFarland,* 13 Mass. 314.   *Newall* v. *Wright,* 3
Mass. 155.   *Thayer* v. *Smith,* 17 Mass. 429.

WILDE, J.   This case depends on the validity of the plain-
tiff's title.   The action was commenced before a justice of the
peace, upon the Rev. Sts. *c.* 104, § 4, providing a remedy in
cases of forcible entry and detainer.   At the trial, however, the
question, whether or not a forcible entry or detainer had been
proved, was waived by consent of parties, and the case was
submitted on the question as to the legal title.   Both parties
derive their titles from William Trumbull, who mortgaged the
premises, in 1832, to Henry Hatch ; and from this mortgage
the plaintiff derives his title.   It was proved at the trial, that
this mortgage had been assigned by said Hatch to Charles Hood.
It was afterwards assigned by Hood to Boyd Howard, and was
by him assigned to the plaintiff.   If this mortgage is a subsist-
:ng mortgage, and the said several assignments are valid, the
plaintiff has the legal title and the right of possession ; as the
defendant claims under a subsequent deed from Trumbull, made

in 1835, by which the premises were conveyed to one Isaac Whitman in fee, in trust for the defendant.

To impeach the plaintiff's title, the defendant called the said Hood, from whom Boyd Howard procured the assignment of the said mortgage, who testified that he received payment of the mortgage from a person whom he did not know, and supposed the payment was made on behalf of Trumbull ; and that it was not his intention to assign the mortgage. But it was testified by Justin Field, that he wrote the assignment, saw it executed, and attested it as a witness ; and that he told Hood that he and Howard had come to get an assignment, if he was willing to assign. This evidence was admitted, to avail as far as it should be considered competent. We consider it clearly incompetent, so far as it contradicts the written assignment.

It has been argued by the defendant's counsel, that the transaction was fraudulent. But we do not find in the report of the evidence any matter to support the charge of fraud. The assignment of the mortgage could not operate to the injury of Trumbull ; for when he conveyed the premises to Whitman, he conveyed with warranty, and agreed to pay and procure a discharge of the mortgage. It was therefore immaterial to him, whether he paid the balance to Hood or to his assignee ; but if Boyd Howard had paid and discharged the mortgage, he would have had no legal right to recover from Trumbull the money paid, as it was not paid at his request. But however this may be, the assignment could in no respect operate to the injury of Trumbull. Nor was it fraudulent as to the defendant, although the mortgage was paid with the money received by Boyd Howard in payment of a legacy to the defendant, and although he had before agreed that the premises should be held in trust for his wife. So far as this post-nuptial agreement was executed by the conveyance of the property to the trustee, it was binding, and the property could not be reclaimed ; but, so far as the agreement was executory, it was clearly not obligatory. And although the money paid was received in payment of a legacy to his wife, it was not her money, but was his, after he had reduced it to possession. And besides ; the defendant has her remedy against Trumbull on

his covenant of warranty ; and he, as before remarked, was bound to pay and discharge the mortgage. In no respect, therefore, can the assignment procured by Boyd Howard be considered as a fraudulent act. So that the parol evidence to prove that the mortgage was not intended to be assigned is inadmissible.

It was, however, contended by the defendant's counsel, that the evidence of payment is competent, and that payment of the mortgage debt would be a discharge of the mortgage ; so that if it were afterwards assigned, no title would pass by the assignment. If this objection were well founded, the question of fact should have been decided by the jury ; for the testimony of Hood and that of Field, on this point, are conflicting and irreconcilable. But we are of opinion that the objection cannot be maintained, however the fact may be. The payment of the mortgage debt, after condition broken, does not extinguish the legal title of the mortgagee. This has been so repeatedly decided, that it is no longer an open question. The remedy for the mortgagor, or those holding under him, in such case, is by a bill in equity. If this were an action to foreclose the right of redemption, the objection would be material ; for if the mortgage debt has been paid, the plaintiff would not be entitled to a conditional judgment. But in an action for a forcible entry or detainer, this difficulty does not occur. Boyd Howard, before his wife's divorce from him, had entered upon the prea ises for condition broken ; but whether this entry were legal and available in favor of the plaintiff, so as to foreclose the defendant's equity of redemption, is not a question to be considered in the present case. The only question submitted is, whether the plaintiff is entitled to possession, upon the title proved ; and we are of opinion that he is so entitled.

According to the agreement of the parties, therefore, the non-suit must be set aside, and judgment rendered for the p'aintiff on default.